FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA 12 APR 20 AM 9:59
FORT WAYNE DIVISION

ROBERT N. TRGOVICH
U.S. DISTRICT COURT
FOR THE NORTHERN DISTRICT
OF INDIANA

EMILY HERX, )
)
Plaintiff, )
)
v. ) **1:12CV122 RLM**
)
DIOCESE OF FORT WAYNE- )
SOUTH BEND INC. AND ST.VINCENT )
DE PAUL SCHOOL, )
)
Defendants. )

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Emily Herx ("Herx"), by counsel, files this Complaint and Demand for Jury Trial against Defendants Diocese of Fort Wayne-South Bend Inc. ("the Diocese") and St. Vincent de Paul School ("the School"), under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e *et seq.*, and Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*

### I. PARTIES, VENUE, AND JURISDICTION

1. Herx, a female, resides in Hoagland, Indiana, which is in Allen County, within the Northern District of Indiana, Fort Wayne Division.

2. The Diocese has offices and conducts business in the Northern District of Indiana.

3. Excluding a one year sabbatical, Herx was an employee of the Diocese from August 2003 until her employment was involuntarily terminated on June 22, 2011. Until her termination, Herx was a teacher at the St. Vincent de Paul School in Fort Wayne, Indiana, which is within the Northern District of Indiana, Fort Wayne Division.

4. This Court has personal jurisdiction over Plaintiff and Defendants and venue is proper in this court.

5. This Court has original subject matter jurisdiction over Herx's claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e *et seq.* and Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*

6. Venue is proper pursuant to 28 U.S.C. § 1391, in that the Diocese and the School are subject to personal jurisdiction in the Northern District of Indiana, the Diocese and the School regularly conduct business activities within the Northern District of Indiana, and a substantial part of the events giving rise to the Plaintiff's claims occurred in the Northern District of Indiana.

## II. FACTUAL ALLEGATIONS

7. Herx hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth here.

8. Herx worked for the Diocese of Fort Wayne-South Bend beginning in August 2003 as a teacher at the St. Vincent de Paul School in Fort Wayne, Indiana.

9. Throughout her entire employment with the Diocese, Herx taught Literature and/or Language Arts.

10. Throughout her entire employment with the Diocese, Herx never taught a religion class, led planning for an all school Mass, or engaged in any religious instruction.

11. Herx was hired by the School to be a Literature and/or Language Arts teacher.

12. Herx was not required to complete any training or education in the Catholic faith as a condition of her employment. Herx has not been ordained by the Catholic Church. She

holds no title within the Catholic Church or Diocese. She does not qualify as a minister or priest under the Internal Revenue Code tax exemption held for ministers.

13. During her employment with the Diocese, Herx never held herself out as a minister or priest.

14. Herx holds a Bachelor of Arts from Ball State University and a teaching license from Taylor University. Herx does not have any form of religious degree or certification.

15. Herx has not taken any higher education religion classes. She had not been asked by the Defendants to take any religion classes.

16. Herx suffers from a diagnosed medical condition which causes infertility. In November of 2008, Herx and her husband began medical treatment with a fertility doctor. In accordance with their fertility doctor's diagnosis and recommended treatment, the couple's treatment plan included insemination and in vitro fertilization ("IVF").

17. Prior to undergoing fertility treatment in 2008, Herx informed her immediate supervisor, Principal Sandra Guffey ("Guffey") that she and her husband were considering fertility treatment. Principal Guffey replied, "You are in my prayers."

18. In 2010, Herx signed a contract with the School to renew her position as a Language Arts teacher for the upcoming school year which was to run from August 15, 2010, through June 15, 2011.

19. On March 15, 2010, Herx communicated via email to Guffey that she would be scheduling sick days so that she could undergo IVF treatment. This was the couple's first round of IVF treatment. At no point throughout the couple's first round of IVF did Guffey object, alert Herx to any Catholic teachings or doctrine that might be implicated, or take any disciplinary action against Herx.

20. Over a year later, following an email to attendance personnel requesting time off for a second round of IVF treatment, Herx was asked by Guffey to meet with Msgr. John Kuzmich, Pastor of the St. Vincent de Paul Catholic Church in Fort Wayne, Indiana on April 14, 2011.

21. In the April 14, 2011, meeting, Msgr. Kuzmich told Herx that another teacher had complained that Herx and her husband were undergoing IVF treatment. Herx had previously disclosed her struggle with infertility and decision to undergo fertility treatments to both Guffey and another priest at St. Vincent de Paul, Father Jason Freiberger.

22. At the April 14, 2011, meeting, Msgr. Kuzmich told Herx that he feared that if word of her IVF treatment got out it would cause a "scandal," and that it would have been better if she had just not said anything to anyone about fertility treatment. During this meeting, Msgr. Kuzmich asked very specific questions about the timing of the IVF cycle and when Herx would know whether or not she had become pregnant. At the end of this meeting, Herx asked Msgr. Kuzmich if her job was at risk, and he replied that he had to do more research and discuss the situation with others as he did "not know much about this."

23. The April 14, 2011, meeting was the first time Herx was informed by any employee or agent of the Diocese or the School, either orally or in writing, that receiving fertility treatment may be a violation of the teachings of the Catholic Church.

24. Despite the fact that Herx was given the highest marks in her teacher evaluations throughout her tenure at St. Vincent de Paul School, on April 25, 2011, Herx received a notification of non-renewal of her teaching contract for the 2011-2012 school year, citing "improprieties related to church teachings or law."

4

25. The School and the Diocese, however, asked Herx to complete the school year as a teacher and kept her in her teaching position until June 22, 2011.

26. At Herx's request, Guffey, Herx, Herx's father (who is an attorney), and the Assistant Principal, Beth Kleber, met on May 2, 2011. Herx requested that Defendants reconsider the nonrenewal of her contract.

27. On May 3, 2011, Guffey sent Herx a letter confirming the original decision not to renew Herx's teaching contract. Herx next requested that Msgr. Kuzmich meet with her and reconsider.

28. On May 24, 2011, Herx, her husband, and her father met with Msgr. Kuzmich and Guffey. Msgr. Kuzmich repeatedly told Herx that she was a "grave, immoral sinner" and that it would cause a "scandal" if anyone was to find out that St. Vincent de Paul had a teacher who received fertility treatment. Msgr. Kuzmich told Herx that this situation would not have occurred had no one found out about the treatments, and that some things were "better left between the individual and God."

29. At the May 24, 2011, meeting, Msgr. Kuzmich asked Herx questions about the medical treatments. His questions made it clear that he did not understand the medical treatments actually administered to Herx and her husband by a duly licensed medical doctor and was, instead, relying on uninformed assumptions about fertility treatment in general.

30. Msgr. Kuzmich confirmed that Herx was an excellent teacher, as reflected in her performance reviews, and that her performance had nothing to do with the decision to terminate her employment.

31. Msgr. Kuzmich refused to renew Herx's contract. On June 22, 2011, Herx was officially terminated by the Diocese, citing "[i]mproprieties related to Church Teachings or Law."

32. On July 13, 2011, Herx's father wrote to Bishop Kevin Rhoades, the Bishop of the Diocese of Fort Wayne-South Bend, on Herx's behalf, to request an appeal.

33. Bishop Rhoades refused to renew Herx's contract, stating that "The process of in virto fertilization very frequently involves the deliberate destruction or freezing of human embryos," and "In vitro fertilization . . . is an intrinsic evil, which means that no circumstances can justify it." Herx's appeal to the Bishop was the final step in the administrative appeals process within the Diocese.

34. Throughout her actual course of medical treatment, neither Herx nor her physician destroyed a single embryo. In their initial meetings, Herx informed Guffey and Msgr. Kuzmich of this fact.

35. Each time Herx received a fertility treatment, the medical treatment bills were submitted to the health insurance plan in which she was a participant as an employee of the Diocese. The Diocese's health insurance plan is self-funded. The Diocese's health insurance plan covered Herx's office visits to the fertility doctor and covered the anesthesia services associated with IVF procedures.

36. Each time Herx needed time off work in order to receive fertility treatments, she requested time off through the appropriate school personnel and was honest about her reason for requesting time off. Each time, her request was granted. Herx never took more than her allotted sick and/or personal days off from work.

6

37. Defendants employ teachers similarly situated to Herx who are not of the Catholic faith. Defendants employ teachers similarly situated to Herx who do not regularly attend Catholic mass.

38. Defendants employ teachers similarly situated to Herx who are divorced, including but not limited to the Principal, Sandra Guffey.

39. Defendants employ teachers similarly situated to Herx who have received medical treatment or procedures including but not limited to hysterectomies, vasectomies, tubal ligations, and other treatments and procedures which effect or alter their fertility and/or reproductive organs.

40. Defendants employ teachers similarly situated to Herx who use contraceptives.

41. Defendants provide no training, policies, handbooks, or procedures to their teachers and other employees explaining what is or is not considered to be acceptable by the employer with regard to fertility practices and/or treatments.

42. Prior to April 2011, Herx was not trained, informed, or warned about what, if any, fertility practices and/or treatments would be deemed unacceptable by the Catholic Church and would provoke her termination.

43. On October 19, 2011, Herx filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against the Diocese alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e *et seq.* and Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*

44. On November 1, 2011, Herx filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against the School alleging violations of Title

7

VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e *et seq.* and Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*

45. Following an investigation of the Charges, the EEOC issued a Determination against both the Diocese and the School on January 10, 2012, stating, "Evidence obtained during investigation shows that [Defendants] did terminate [Herx]'s employment in violation of Title VII and the ADAAA. Further evidence indicates that [Defendant]'s policy denying employees recourse to government agencies regarding employment disputes is contrary to the anti-retaliation laws enforced by the Commission." A copy of that finding is attached hereto as Exhibit A.

46. On February 7, 2012, the EEOC issued to Herx a Notice of Right to Sue for both her Charge against the Diocese and her Charge against the School.

47. Herx has exhausted all administrative remedies through the School, the Diocese, and the EEOC.

### III. LEGAL ALLEGATIONS

#### Count I: Violation of Title VII and the Pregnancy Discrimination Act

48. Herx hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth here.

49. Herx received fertility treatment from a licensed physician and, at all relevant times, agents and/or employees of Defendants knew that Herx was receiving medical treatment for infertility.

50. Defendants knowingly and intentionally discriminated against Herx by treating her differently than similarly situated male employees in the terms and conditions of her employment.

51. Defendants knowingly and intentionally discriminated against Herx by treating her less favorably than similarly situated employees in the terms and conditions of her employment after becoming aware that Herx was trying to become pregnant.

52. Defendants knowingly and intentionally discriminated against Herx by terminating her employment because Herx was unable to become pregnant by natural means and sought medical treatment for infertility as diagnosed and prescribed by her physician.

53. Defendants employ male teachers similarly situated to Herx who have received medical treatments or procedures, including vasectomies, which effect or alter their fertility and/or reproductive organs.

54. Defendants employ male teachers similarly situated to Herx who use contraceptives.

55. Upon information and belief, Defendants employ male teachers similarly situated to Herx who have received fertility treatment and/or their spouses have received fertility treatment.

56. As a result of the Diocese's and the School's discriminatory practices, Herx has sustained economic injury in lost earnings and lost earning potential.

57. As a result of the Diocese's and the School's discriminatory practices, Herx has sustained severe emotional injury and pain and suffering.

58. The Diocese and the School discriminated against Herx deliberately and with malice and in reckless disregard of her federally-protected rights.

### Count II: Violation of Title I of the Americans with Disabilities Act

59. Herx hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth here.

9

60. Herx has been diagnosed with infertility by a medical doctor. Herx suffers from infertility, a disability under the Americans with Disabilities Act.

61. At all relevant times, the Diocese and the School knew of Herx's disability.

62. Herx's disability in no way hindered her ability to perform the essential functions of her job.

63. No accommodation of Herx's disability was needed or requested.

64. The Diocese and the School knowingly and intentionally discriminated against Herx by treating her differently than similarly situated employees in the terms and conditions of her employment because of her disability.

65. The Diocese and the School knowingly and intentionally discriminated against Herx by terminating her employment because Herx sought medical treatment for her disability.

66. As a result of the Diocese's and the School's discriminatory practices, Herx has sustained economic injury in lost earnings and benefits and lost earning potential.

67. As a result of the Diocese's and the School's discriminatory practices, Herx has sustained severe emotional injury and pain and suffering.

68. The Diocese and the School discriminated against Herx deliberately and with malice and in reckless disregard of her federally-protected rights.

### IV.   RELIEF REQUESTED

Plaintiff requests the following relief:

    a. Compensatory damages;

    b. Damages to compensate Herx for mental anguish and emotional distress;

    c. Liquidated damages and/or punitive damages;

    e. All costs and reasonable attorney fees incurred in litigation of this action;

  f. Pre-judgment and post-judgment interest; and

  g. Any and all other legal and/or equitable relief to which Plaintiff is entitled.

Dated: April 19, 2012        Respectfully submitted,

               */s/ Kathleen A. DeLaney*

               Kathleen A. DeLaney (#18604-49)
               Sarah E. Caldwell (#29850-03)
               DeLaney & DeLaney LLC
               3646 Washington Blvd.
               Indianapolis, IN 46205

## JURY DEMAND

Plaintiff, Emily Herx, by counsel, hereby demands a trial by jury on all issues so triable.

               Respectfully submitted,

               */s/ Kathleen A. DeLaney*

               Kathleen A. DeLaney (#18604-49)
               Sarah E. Caldwell (#29850-03)
               DeLaney & DeLaney LLC
               3646 Washington Blvd.
               Indianapolis, IN 46205