UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| EMILY HERX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:12-cv-122-RLM-RBC |
| | ) | |
| DIOCESE OF FORT WAYNE - | ) | |
| SOUTH BEND INC. and ST. VINCENT | ) | |
| DE PAUL SCHOOL, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS
DISMISSING PLAINTIFF'S COMPLAINT (DKT. 16)**

Plaintiff Emily Herx ("Herx"), by counsel, provides her Response in Opposition to Defendants Diocese of Fort Wayne-South Bend Inc. and St. Vincent de Paul School's (collectively referred to as "Defendants") Motion for Judgment on the Pleadings Dismissing Plaintiff's Complaint and Memorandum of Law in Support of Defendants' Motion for Judgment on the Pleading Dismissing Plaintiff's Complaint (collectively referred to as Defendants' "Motion").

**INTRODUCTION**

Plaintiff has adequately plead cognizable, *prima facie* claims of gender, sex, and disability discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") and Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. ("the ADA"). (Dkt. 1). Defendants have admitted that they decided not to renew Plaintiff's teaching contract because she received fertility treatment. (Dkt. No. 17, p. 3). They have, therefore, conceded to a violation of federal employment law. Unsurprisingly,

the Equal Employment Opportunity Commission issued a determination that the Defendants violated federal employment law.  (Dkt. 5).

The statutory exemptions in Title VII and the defenses in the ADA asserted by Defendants in support of their Motion are not applicable to this case or to the claims made by Plaintiff.  Defendants cite no case or authority to the contrary.  Defendants rely on old and mostly irrelevant case law regarding *religious* discrimination claims made against religious employers.  Plaintiff claims that Defendants discriminated against her on the basis of gender, pregnancy, and disability in violation of Title VII, the Pregnancy Discrimination Act, and the ADA.[1]  Defendants assert, without support, that these laws do not apply to them because they are religious entities.  In the alternative, they argue that if these employment discrimination laws do apply to them in this instance, then those well-established laws must be found, for the first time since they became law, to be unconstitutional.  Both arguments must fail.

The narrow statutory exemptions cited by Defendants do not apply here because there is no claim of religious discrimination.  It is well established law that Title VII and the ADA apply to religious entities.  Further, it is clear that the laws apply in this case – which was brought by a non-ministerial employee.  To the extent any First Amendment concerns exist, those concerns are addressed by the statutory exemptions and the ministerial exception.  Defendants wrongly characterize Plaintiff's challenge to the non-renewal of her teaching contract as a challenge to religious tenets themselves.  (*See* Dkt. 17, p. 12).  Plaintiff has not and will not ask this Court to evaluate the merits of Catholic Church religious tenets.  Defendants' suggestion to the contrary is intended to distract from the real issues.  The religious tenets, policies, or doctrines Defendants

---

[1] In 1978, Title VII of the Civil Rights Act was amended to include the Pregnancy Discrimination Act ("PDA").  "Congress overcame the Gilbert ruling by enacting § 1 of the Pregnancy Discrimination Act of 1978, 92 Stat. 2076, 42 U. S. C. § 2000e(k) (1976 ed., Supp. V), which added subsection (k) to § 701 of the Civil Rights Act of 1964.  *Shaw v. Delta Air Lines*, 463 U.S. 85, 89 (1983).  Plaintiff refers to both her gender discrimination claim and pregnancy discrimination claim, together, as "Title VII."

assert they relied upon in their decision not to renew Plaintiff's contract were applied against Plaintiff in an unlawful and discriminatory manner.

Defendants continue to misconstrue Plaintiff's claims in an effort to shoehorn this case into inapplicable statutory exemptions.  Not only do Defendants misconstrue Plaintiff's gender, pregnancy, and disability discrimination claims as religious discrimination claims, they make arguments relating to the contract Plaintiff signed with Defendants.  (Dkt. 16, p.4, ¶ 12). Plaintiff has not made a breach of contract claim.  (Dkt. 1).  Defendants' breach of contract and religious discrimination arguments are red herrings.

Defendants ask this Court to rule that any and all employment decisions made by the Catholic Church or any other religious employer, in all of their schools, universities, hospitals, nursing homes, and other places of employment which extend far beyond Church doors and the employment of ministers, are universally exempt from long-standing federal statutes prohibiting gender, pregnancy, and disability discrimination.  Such a ruling would be a dramatic, unprecedented, and radical shift in the law.  This Court should deny Defendants the relief they seek, particularly on this limited record in this early stage of the proceeding.

## STATEMENT OF FACTS

Plaintiff was hired by the Diocese of Fort Wayne – South Bend in August 2003 for a position as a Literature or Language Arts teacher at the St. Vincent de Paul School in Fort Wayne, Indiana.  (Dkt. 1 at ¶¶ 8-9, 11).  Plaintiff has no religious training and never taught a religion class during her employment with the Diocese. (Dkt. 1 at ¶¶ 10, 12-15).  Neither Plaintiff nor other teachers similarly situated to Plaintiff in their terms of employment and responsibility were ever asked to take any religious based training by the Diocese, nor was any training regarding the Catholic Church's teachings on fertility treatments ever offered by the

Diocese to Plaintiff or similarly situated teachers.  (Dkt. 1 at ¶¶ 10, 12-15; see also Affidavit of Kimberly Reber, attached hereto as Exhibit 1).

Shortly after being diagnosed with a medical condition which causes infertility, Plaintiff and her husband began medical treatment with a fertility doctor in November, 2008.  (Dkt. 1 at ¶ 16).  In accordance with their fertility doctor's diagnosis and recommendations, the couple's treatment plan included artificial insemination and in vitro fertilization ("IVF").  (Dkt. 1 at ¶ 16).  Prior to undergoing her first fertility treatment in 2008, Plaintiff informed her immediate supervisor, St. Vincent de Paul School Principal Sandra Guffey, that she and her husband were considering fertility treatment, and Guffey replied, "You are in my prayers."  (Dkt. 1 at ¶ 17).

On April 14, 2011, over two years after Guffey was first informed about Plaintiff's fertility treatments, over a year after Guffey first learned that Plaintiff and her husband were receiving the specific fertility treatment of IVF, and after Defendants had renewed Plaintiff's contract for the 2010-2011 school year, Plaintiff was asked to attend a meeting with Msgr. Kuzmich, Pastor of the St. Vincent de Paul Catholic Church in Fort Wayne, Indiana.  (Dkt. 1 at ¶¶ 18-20).  During the meeting, Msgr. Kuzmich asked Plaintiff very specific questions about the timing of the IVF cycle and when Herx would know whether or not she had become pregnant. (Dkt. 1 at ¶ 22).  That meeting was the first time Plaintiff was informed by any employee or agent of the Diocese that receiving fertility treatments may be against church teachings.  (Dkt. 1 at ¶¶ 21, 23).

On April 25, 2011, Herx received a notification of non-renewal of her teaching contract for the 2011-2012 school year, citing "improprieties related to church teachings or law."  (Dkt. 1 at ¶ 24).  Defendants have admitted that Plaintiff's teaching contract was not renewed because she received IVF treatments.  (Dkt. Nos. 17, 3).  Despite notifying her in April that she had

committed "improprieties related to church teachings or law," Defendants kept Plaintiff teaching in the classroom until the school year ended on June 22, 2011.  (Dkt. 1 at ¶ 25).

After first appealing to the Principal of the School and the Monsignor of the Church, Plaintiff's father wrote a letter of Appeal to Bishop Kevin Rhoades.  (Dkt. 1 at ¶ 32).  Bishop Rhoades' response to that letter of appeal states, "Both you and Emily contend that there are those on the faculty of our Catholic schools who are divorced and who retain their ability to teach.  A clarification is needed: those divorced who then enter another marriage (an invalid one) are not allowed to teach in our Catholic schools."  (Letter from Bishop Rhoades, July 22, 2011, attached hereto as Exhibit 4).

After exhausting all avenues of appeal available to her through Defendants, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission against the Diocese on October 19, 2011, and filed a Charge against the School on November 1, 2011.  (Dkt. 1 at ¶¶ 26-28; 31-33; 43-44).  Both Charges alleged violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq.* and Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*  (Dkt. 1 at ¶¶ 43-44).  Following investigation of the Charges, the EEOC issued a Determination against both the Diocese and the School on January 10, 2012, stating, "Evidence obtained during investigation shows that [Defendants] did terminate [Plaintiff]'s employment in violation of Title VII and the ADAAA.  Further evidence indicates that [Defendant]'s policy denying employees recourse to government agencies regarding employment disputes is contrary to the anti-retaliation laws enforced by the Commission."  (Dkt. 5, p.2).

Plaintiff filed her Complaint and Demand for jury trial against the Diocese on April 20, 2012 (Dkt. 1) and Defendants filed their Second Amended Answer and Affirmative Defenses to

Plaintiff's Complaint on August 24, 2012.  (Dkt. 42).  Defendants filed a Motion for Judgment on the Pleadings Dismissing Plaintiff's Complaint and a Memorandum of Law in Support on June 21, 2012.  (Dkt. 16, 17).

Plaintiff asks this Court to deny Defendants' Motion for Judgment on the Pleadings.  In the alternative, Plaintiff asks that the Court convert this Motion to a Rule 56 motion and allow the case to proceed through the discovery phase before ruling on Defendants' potentially case dispositive motion.

## ARGUMENT

## I.     APPLICABLE LEGAL STANDARDS.

### A.     Rule 12(c) Standard.

Rule 12(c) permits a party to move for judgment on the pleadings after the parties have served the complaint and the answer.  *Ruiz v. Midland Credit Mgmt.*, 2012 U.S. Dist. LEXIS 1657, *3 (N.D. Ind. Jan. 6, 2012).  A Motion for Judgment on the Pleadings under Rule 12(c) is subject to the same standard of review as a motion to dismiss under Rule 12(b)(6).  *Piekosz-Murphy v. Bd. of Educ. of Cmty. High Sch. Dist. No. 230*, 2012 U.S. Dist. LEXIS 33249, *7 (N.D. Ill. Mar. 12, 2012), (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F. 3d 449, 452 (7th Cir. 1998)).   "A grant of judgment on the pleadings is appropriate where, 'it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief.'" *Piekosz-Murphy*, 2012 U.S. Dist. LEXIS 33249, at *7 (citing *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000)).  A court may rule on a judgment on the pleadings under Rule 12(c) based on a review of the pleadings alone, which include the complaint, the answer, and any written instruments attached as exhibits.  *Ruiz*, 2012 U.S. Dist. LEXIS 1657, at *4 (citing *Forseth*, 199 F.3d at 452-53). In considering a Rule 12(c) motion, the Court must accept all well-

pleaded allegations in the complaint as true and must draw all reasonable inferences in the plaintiff's favor.  *Piekosz-Murphy*, 2012 U.S. Dist. LEXIS 33249, at *7.

## B. Conversion of Rule 12(c) to Rule 56 Motion.

Federal Rule of Civil Procedure 12(d) reads: "If on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).  *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 (7th Cir. 2012) ("If a moving party relies on additional materials, the motion must be converted to one for summary judgment under Rule 56.").  "A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice."  *Id.* at n.1.  Moreover, the *Geinosky* decision noted that a plaintiff, not a defendant, has more flexibility to raise factual allegations or materials outside of the pleadings in opposing a 12(b)(6) or 12(c) motion, as long as the new elaborations are consistent with the pleadings.  *Id.*

## II.   PLAINTIFF HAS PRESENTED A *PRIMA FACIE* CASE OF GENDER, PREGNANCY AND DISABILITY DISCRIMINATION.

Plaintiff's Complaint presents a *prima facie* case of gender, pregnancy, and disability discrimination.  (Dkt. 1).  Defendants have admitted that their decision not to renew Plaintiff's contract was due to her receipt of fertility treatments, and the specific treatment of IVF.  (Dkt. 42, ¶¶ 30, 33).  "The plaintiff's initial burden in establishing a *prima facie* case is de minimus." *Ganzy v. Allen Christian School*, 995 F. Supp. 340, 346 (E.D.N.Y. 1998).  Plaintiff in a Title VII claim must show she is part of a protected group, was qualified for the position and satisfactorily performing her job, was adversely affected by the decision to terminate her, and was treated less

favorably than another employee outside of the protected group, who was employed under similar conditions. *Id.* Plaintiff has indisputably met this standard, including demonstrating, to the best of her ability without the benefit of discovery, that Defendants treated similarly situated employees differently. (Dkt. 1, ¶¶ 37-40; *see also*, Exhibits 2 and 3, attached).[2] A similar analysis is followed for ADA discrimination claims. *See Lloyd v. Swiftly Transp. Inc.*, 552 F.3d 594, 601 (7th Cir. 2009) (noting that to prevail with an ADA violation claim under the indirect method a plaintiff must establish, "(1) he is disabled under the ADA, (2) he was meeting his employer's legitimate employment expectations, (3) he suffered an adverse employment action, and (4) similarly situated employees without a disability were treated more favorably."); *Dvork v. Mostardi Platt Assocs.*, 289 F.3d 479, 483 (7th Cir. 2002) (noting that to establish a claim under the direct method, the plaintiff must establish, "(1) she is disabled within the meaning of the ADA, (2) she is qualified to perform the essential functions of her job either with or without reasonable accommodation, and (3) she has suffered from an adverse employment decision because of her disability.").

Plaintiff has pled a *prima facie* case of pregnancy, gender and disability discrimination. The burden then shifts to Defendants to articulate a legitimate, nondiscriminatory reason for their termination of Plaintiff. *Ganzy*, at 346-47. Defendants have set forth no legitimate, nondiscriminatory reason for termination, and in fact have admitted that Plaintiff's contract was not renewed due to her undergoing IVF treatments. (Dkt. 17, p. 3; Dkt. 42 ¶¶ 30, 33).

---

[2] Exhibit 2 is a screenshot of St. Vincent de Paul School's website listing Sandra Guffey as the principal. St Vincent de Paul Catholic School, http://www.saintv.org/school/Main_Departments/staff.html (last visited Sept. 12, 2012). Exhibit 3 is a screenshot of St. Vincent de Paul Church's Church Calendar demonstrating that Ms. Guffey is to be wed at St. Vincent de Paul Church on November 3, 2012 in corroboration of paragraph 38 of the Complaint. (Dkt. 1, ¶ 38). St. Vincent de Paul Church, https://www.google.com/calendar/embed?src=church@saintv.org&ctz=America/New_York&gsessionid= OK (last visited Sept. 12, 2012).

Defendants have further admitted that Plaintiff's skills, knowledge, and proficiency as a Literature and Language Arts teacher were more than satisfactory and in no way a factor in the decision not to renew Plaintiff's contract.  (Dkt. 42, ¶ 30).  Finally, Defendants have not alleged Plaintiff was a minister, or would garner any protection from the judicially created ministerial exception.[3]  (Dkt. 42).

Plaintiff has met her burden of proof in presenting a *prima facie* case of discrimination. Defendants have failed to meet their burden.  Defendants cannot be permitted to dispose of this matter on the pleadings.

III.    **THIS COURT SHOULD REJECT DEFENDANTS' ATTEMPT TO CAST ASIDE WELL-ESTABLISHED LAW CONFIRMING THAT TITLE VII AND THE ADA APPLY TO RELIGIOUS EMPLOYERS.**

Defendants ask this Court to reach a result which would constitute a sea change in existing law.  The exemptions found in Title VII apply to claims of religious discrimination against a religious employer.  Plaintiff makes no such claim.  The defenses in the ADA state that an employer may require conformity to religious tenets.  Defendants' proposed interpretation of these exemptions would swallow the statutory prohibitions against sex, pregnancy, and disability discrimination entirely for all employees of religious institutions.  Defendants clearly do not fall under the protections of the statutory exemptions and defenses, and they have failed to cite any authority to the contrary.

A.    **Title VII's Statutory Exemptions Do Not Apply Here Because Plaintiff Has Not Brought a Religious Discrimination Claim.**

Defendants incorrectly rely on the exemptions found in Title VII at 42 U.S.C. § 2000e-1-2. Those read, in their entirety as follows:

---

[3] The ministerial exception protects religious organizations from the federal governments' interference with the religious entities' employment relationships with their ministers.  *McClure v. Salvation Army*, 460 F.2d 553, 558- 59 (5th Cir. 1972).

> 42 U.S.C. § 2000e-1.  Exemption
> (a) This title [42 USCS §§ 2000e et seq.] shall not apply to an employer with respect to the employment of aliens outside any State, or to a religious corporation, association, educational institution, or society with respect to the employment of individuals *of a particular religion* to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities.
> . . .
> 42 U.S.C. §2000e-2(e)(2) [I]t shall not be an unlawful employment practice for a school, college, university, or other educational institution or institution of learning to hire and employ employees *of a particular religion* if such school, college, university, or other educational institution or institution of learning is, in whole or in substantial part, owned, supported, controlled, or managed by a particular religion or by a particular religious corporation, association, or society, or if the curriculum of such school, college, university, or other educational institution or institution of learning is directed toward the propagation of a particular religion.

42 U.S.C. § 2000e-1 and 42 U.S.C. § 2000e-2(e)(2) (emphasis added).  As is clear from the plain language, these exemptions apply to claims of religious discrimination against a religious employer.  *See also, U.S. Equal Employment Opportunity Commission, Questions and Answers: Religious Discrimination in the Workplace*, (January 31, 2011), http://www.eeoc.gov/policy/docs/qanda_religion.html.  Plaintiff has not pled a claim of religious discrimination.[4]   Defendants cite no cases or authority for the notion that the Title VII exemptions apply to claims of discrimination based on protected classes other than religion.  (Dkt. 17, p. 12).  A look at the legislative history of Title VII shows that Congress, in fact, considered and rejected a blanket exemption barring all discrimination claims against a religious employer, in favor of the more narrowly tailored exemption which applies only to religious discrimination claims.  *EEOC v. Pacific Press Pub. Assoc.*, 676 F.2d 1272, 1276  (9th Cir. 1982) (discussing legislative history of Civil Rights Act of 1964 and citing H.R.Rep.No. 914, 88th

---

[4] Nor did Plaintiff file a Charge of Discrimination alleging discrimination on the basis of religion.

Cong., 1st Sess. 10 (1963), reprinted in EEOC, Legislative History of Title VII and XI of Civil Rights Act of 1964 at 2010 (1968)).

Defendants incorrectly rely on *Little v. Wuerl*, 929 F. 2d 944 (3d Cir. 1991), and even go so far as to describe the claims presented in *Little* and by Herx as "almost identical."  (Dkt. 17, p. 11).  *Little*, however, was brought by a former employee who claimed *religious* discrimination by a religious employer.  *Id.* at 945.

Across the board, courts have applied Title VII to religious employers when the employee's claims sound in race, national origin, or gender discrimination.  *See, e.g.*, *Hopkins v. Women's Div., Bd. of Global Ministries*, 238 F. Supp. 2d 174, 180 (D.D.C. 2002) (finding Plaintiff's religious discrimination claim against a religious employer statutorily barred, but evaluating the race discrimination claim as the court would against a non-religious employer); *Pac. Press.*, 676 F.2d at 1279 (holding that Title VII applies to religious employers when the discrimination claim is race, sex, or national origin, and stating, "a total exemption for Pacific Press and similar enterprises would represent a serious conflict with the government's equal employment objectives"); *EEOC v. Tree of Life Christian Schs.*, 751 F. Supp. 700 (S.D. Ohio 1990) (pursuant to Title VII, Equal Pay Act, and Fair Labor Standards Act, religious school could not pay women less than men based on faith's beliefs about gendered family roles).  Defendants now ask this Court to issue a ruling contrary to law and to grant them wholesale immunity under the guise of a narrow statutory exemption which is inapplicable here.

**B.    ADA Statutory Defenses Do Not Apply Because Plaintiff Has Not Claimed Preferential Employment Practices and Defendants Did Not Require Similarly Situated Non-Disabled Employees to Comply with their "Religious Tenets."[5]**

Defendants similarly misplace reliance on ADA defenses.  Those defenses read, in their entirety as follows:

> (d) Religious entities.
>   (1) In general. This title shall not prohibit a religious corporation, association, educational institution, or society from giving preference in employment to individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities.
>   (2) Religious tenets requirement. Under this title, a religious organization may require that all applicants and employees conform to the religious tenets of such organization.

42 U.S.C. § 12113.

The first ADA defense contains similar language to Title VII and there is evidence that it is meant to be interpreted in a similar fashion as Title VII.  *See* H.R. Rep. No. 101-485 (II), at 76-77 (1990).  The second defense, however, is modeled more after the religious exemption found in Title IX.  S. Rep. No.101-116, at 42; H.R. Rep. No. 101-485 (II), at 77.  The case law regarding both religious employer defenses of the relatively recently enacted ADA is not as well developed as that of Title VII.  Moreover, there is very little case law regarding interpretation of the religious tenets exemption in Title IX.  Some courts have considered the ADA defenses and applied a plain language interpretation.  *See Leavy v. Congregation Beth Shalom*, 490 F. Supp. 2d 1011, 1018 (N.D. Iowa 2007) (case was allowed to proceed to summary judgment stage though eventual determination in favor of religious employer).

---

[5] Plaintiff's ability to respond to Defendants' potentially dispositive motion is hampered by her lack of access to discovery materials such as comparator evidence.  Plaintiff served written discovery on Defendants on May 31, 2012; however, Defendants sought and obtained a stay of discovery over Plaintiff's objections.  (Dkt. Nos. 18, 30, 33, 45).

The second ADA defense allows a religious entity to require conformity by all employees to their religious tenets. Defendants argue that this defense is case dispositive. Plaintiff claims, however, that the Defendants' 'religious tenets' have been applied in a discriminatory manner. The Complaint and Amended Answer are devoid of allegations about the content of Defendants' religious tenets, whether all applicants and employees have been required to conform to those tenets, whether men have been required to conform to those tenets, whether non-pregnant persons have been required to conform to those tenets, whether non-disabled persons have been required to conform to those tenets, and whether Plaintiff conformed to those tenets. Plaintiff has alleged in her Complaint that Defendants have not required *all* applicants or employees to conform to the religious tenets. In fact, Defendants have not required the Principal of St. Vincent de Paul School, Sandra Guffey, to conform to Defendants' religious tenets. (*See* Exhibit 2, attached website screen shot confirming that Ms. Guffey is the Principal of St. Vincent de Paul School). Ms. Guffey, who is divorced, will be remarried on November 3, 2012, at St. Vincent de Paul Church. (*See* Exhibit 3, attached).[6] As Bishop Rhoades stated in his letter to Herx's father on July 22, 2011, "A clarification is needed: those divorced who then enter another marriage (an invalid one) are not allowed to teach in our Catholic schools." (*See* Exhibit 4).

Moreover, Plaintiff's Complaint contains no allegations concerning anyone giving preference to anyone from any particular religion in employment decisions. Plaintiff's Complaint contains no allegations about whether her job duties and responsibilities as a Literature/Language Arts teacher were connected to the carrying on of a religious institution's religious activities. Plaintiff's Complaint does not allege what religious affiliation, if any,

---

[6] Despite the fact that Ms. Guffey's wedding is published on the St. Vincent de Paul Church's calendar on the internet, Defendants stated in their Answer that they "lack knowledge or information sufficient to form a belief as to the truth" of the allegation contained in Plaintiff's Complaint stating that Ms. Guffey was intending to be remarried. (Dkt. 42, ¶ 38; Dkt. 1, ¶ 38).

Plaintiff has now or did have at the time of her termination.  (Dkt. 1).  Defendants' Answer does not allege that they have required *all* applicants and employees to conform to their religious tenets.

By relying on the religious tenet requirement, Defendants have placed at issue whether they have required "that all applicants and employees conform to the religious tenets of such organization."  *See* 42 U.S.C. § 12113(d)(2).  Defendants invite the Court to presume facts and evidence not produced in discovery, despite requests being made, not found in the record, but essential to their defenses.

Finally, regardless of differences in language between the defenses in Title VII and the ADA, it is critical that they all be applied uniformly. To apply the defenses in the ADA in a broader manner than those in Title VII is to invite the use of the ADA defenses as a pretext for gender discrimination. To allow the ADA to be used to disguise otherwise illegal gender discrimination in this manner would run contrary to the logic and spirit of both the ADA and Title VII.

## IV.    THE CONSITUTIONALITY OF TITLE VII AND THE ADA AS APPLIED TO RELIGIOUS EMPLOYERS IS WELL ESTABLISHED.

Defendants assert that any application of federal employment laws against them as religious institutions is unconstitutional, in violation of the Free Exercise Clause and the Establishment Clause of the First Amendment.  That argument must fail.  Federal courts have applied Title VII and the ADA to religious employers for decades.  *See, e.g.*, *E.E.O.C. v. Miss. Coll.*, 626 F.2d 477 (5th Cir. 1980) (applying Title VII to religious employer); *E.E.O.C. v. Fremont Christian School*, 781 F.2d 1362 (9th Cir. 1985) (applying Title VII to religious employers); *Young v. Northern Ill. Conference of United Methodist Church*, 21 F.3d 184 (7th Cir. 1994) (applying Title VII to religious institution); *Scharon v. St. Luke's Episcopal*

14

*Presbyterian Hosps*., 929 F.2d 360 (8th Cir. 1991) (applying Title VII to religious employer); *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 132 S. Ct. 694 (2012) (applying the ADA to religious employer).

In a similar case pending in the Southern District of Ohio, Defendant's Motion to Dismiss was recently denied. *Dias v. Archdiocese of Cincinnati*, 2012 U.S. Dist. LEXIS 43240 (S.D. Ohio Mar. 29, 2012). Plaintiff Dias was the Technology Coordinator for two schools within the Archdiocese of Cincinnati. *Id.* at *2. Dias, who is unmarried, was terminated after she became pregnant through artificial insemination. *Id.* at *3. Ms. Dias then brought a pregnancy discrimination claim against the Archdiocese of Cincinnati, and the Archdiocese sought dismissal of the case. *Id.* at *1-2. As stated by the Southern District of Ohio when evaluating the Archdiocese's Motion to Dismiss, "[p]recedent shows . . . that religious institutions are, and have been, subject to court review of Title VII employment discrimination claims made by non-ministerial employees all across the country." *Dias v. Archdiocese of Cincinnati*, 2012 U.S. Dist. LEXIS 43240, at *23-24.

Defendants assert that Title VII and the ADA do not apply to them, or, if so, they must be unconstitutional. This argument is completely contradictory to law. District Courts are required to follow the law. *See Harris v. McDonald*, 737 F.2d 662, 666 (7th Cir. 1984) ("It bears repeating that in accordance with well-established judicial principles, lower courts are bound to follow, whether personally persuaded by, the decisions of higher courts."); *United States v. Raines*, 2004 U.S. Dist. Lexis 24618 (W.D. Wis. Dec. 2, 2004) ("[D]istrict courts must follow the law of their own circuit."). The law of the Seventh Circuit contradicts Defendants' argument. *See Young*, 21 F.3d 184 (applying Title VII to religious institution).

A.     **Title VII and the ADA Do Not Violate the Establishment Clause.**

Title VII and the ADA do not violate the Establishment Clause of the First Amendment. *Lemon v. Kurtzman*, 403 U.S. 602 (1971), provides the test for Establishment Clause analysis. The *Lemon* test is that, "[f]irst, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster 'an excessive government entanglement with religion.'" *Id.* at 612-613 (internal citations omitted).  Both Title VII and the ADA undoubtedly have a secular legislative purpose.  Defendants do not argue to the contrary.

Both Title VII and the ADA have a principal or primary effect that neither advances nor inhibits religion.  Defendants' Motion states:

> Ignoring the legislatively enacted and constitutionally required relief valves for religiously based decisions by religious employers, as Herx seeks to apply Title VII and the ADA, would result in Title VII and the ADA being unconstitutional since each would have principal or primary effects that inhibit the free exercise of religion and impermissibly invite intrusion by the federal government into religious matters in violation of the standards expressed by the Supreme Court in [*Lemon*].

(citations omitted).  (Dkt. 17, p. 18).  That argument is contrary to both logic and the law.  It cannot reasonably be argued that the "primary effect" of Title VII and the ADA is to advance or inhibit religion.  Defendants put forth no examples or evidence as to how allowing this claim to move forward would inhibit their practice of religion—let alone how applying these laws to Defendants would have the "principal or primary effect" of inhibiting their religion.

If not for decades of case law already deciding the issue, one may be concerned with the final prong of the *Lemon* test – that the statute must not foster "an excessive government entanglement with religion."  Concern for excessive entanglement, however, was addressed by the judicially created ministerial exception.  See *Schleicher v. Salvation Army*, 518 F.3d 472, 475

16

(7th Cir. 2008) ("But the ministers exception is a rule of interpretation, not a constitutional rule; and though it is derived from policies that animate the First Amendment, the relevant policies come from the establishment clause . . . ."). Moreover, as noted by this Court, a blanket exclusion for religious institutions from a federal law as applied to all employees would "raise Establishment Clause concerns of its own." *EEOC v. First Baptist Church*, 1992 U.S. Dist. Lexis 14479, *33 (N.D. Ind. June 8, 1992).

On this point, Defendants' almost singular reliance on *N.L.R.B. v. Catholic Bishop et al.*, 440 U.S. 490 (1979), is misguided. In that case, the Supreme Court interpreted the National Labor Relations Act to deny the Board jurisdiction over teachers in religiously affiliated schools out of concern that Board jurisdiction would raise the risk of an excessive entanglement of religion. 440 U.S. 490 (1979). However, that risk is not present here because enforcement of Title VII against religious institutions does not require the continuous supervision of church affairs that the NLRA mandates. *DeMarco v. Holy Cross High School*, 4 F.3d 166, 169 (2d Cir. N.Y. 1993) (unlike NLRB review "ADEA actions do not require extensive or continuous administrative or judicial intrusion into the functions of religious institutions. The sole question at issue in an ADEA case is whether the plaintiff was unjustifiably treated differently because of his age."); *Pac. Press*, 676 F.2d at 1282 (Title VII's enforcement remedies "do[] not amount to continuous supervision of the kind the Supreme Court sought to avoid in Catholic Bishop."); *Lukaszweski v. Nazareth Hosp.*, 764 F. Supp. 57, 60 (E.D. Pa. 1991) (finding that EEOC's authority under the ADEA is limited in time and scope, unlike the continuous NLRB supervision in collective bargaining and labor disputes).

**B.      Neither Title VII nor the ADA Violates the Free Exercise Clause.**

This Court has previously held that federal employment laws are applicable to religious entities and not in violation of the Constitution in a case involving an Equal Pay Act violation by a Baptist elementary school.  *EEOC v. First Baptist Church*, 1992 U.S. Dist. LEXIS 14479, *19 (N.D. Ind. 1992) (Miller, J.).  In that case, the Defendant School paid married, male teachers a head of household allowance on top of their regular salary.  *Id.* at *2.  Male teachers also received fringe benefits not available to female teachers.  *Id.* at *3-4.  This policy was, according to the Baptist Church, based on the Bible, scriptures, and church doctrine which place the responsibility for providing for one's family on the husband.  *Id.*  In a well-reasoned decision, this Court stated "the Free Exercise Clause does not act as an absolute bar to governmental regulation of religious enterprises.  Government regulation should not be held unconstitutional simply because it may in some way affect the otherwise unfettered operation of a religious institution." *Id.* at *19.

Defendants fail to explain how allowing Ms. Herx's claims to be heard by this Court would violate the Free Exercise Clause—they simply make that bald assertion.  Defendants apparently claim that Title VII and the ADA violate the Free Exercise Clause as applied to religious employers.  But that is not the law.  On their faces, those statutes do not violate the Free Exercise Clause.  As applied to religious employers, Title VII and the ADA do not violate the Free Exercise Clause because any entanglement issues have been addressed by the specific statutory and judicial carve outs created to exempt from coverage religious discrimination claims and a religious institution's relationship with its ministers.  As stated by the D.C. Circuit, "The Free Exercise Clause exempts the selection of clergy from Title VII and similar statues and, as a consequence, precludes civil courts from adjudicating employment discrimination suits by

18

ministers against the church or religious institution employing them." *EEOC v. Catholic University*, 83 F. 3d 455, 461 (D.C. Cir. 1996).

If Defendants instead take the position that the Free Exercise Clause is violated by allowing a secular court to judge their religious doctrine, that concern has also already been addressed by courts considering these issues, and that argument must also fail. In a case alleging gender based discrimination by a Catholic School teacher against her Catholic School employer, the Northern District of Iowa wrote:

> In deciding plaintiff's claim, the court need not even concern itself in any way with the content of that code nor with the substance of Catholic teaching generally. Certainly the court need not pass judgment on the substance of the Catholic Church's moral or doctrinal precepts. The only issues the court need decide are whether those moral precepts, to the extent they constitute essential conditions for continued employment, are applied equally to defendant's male and female teachers; and whether [Plaintiff] was in fact discharged only because she was pregnant rather than because she obviously had pre-marital sexual intercourse in violation of defendant's moral code. For example, if single male teachers at Wahlert High School, known to have engaged in pre-marital sex, were equally discharged any inference of sexual discrimination otherwise shown might be dissipated.

*Dolter v. Wahlert High School*, 483 F. Supp. 266, 270 & n.5 (N.D. Iowa 1980).

### C.     The Ministerial Exception Does Not Apply Here.

Federal courts faced with applying Title VII, the ADA, and other employment laws to religious institutions in their role as employer, have carved out a 'ministerial exception' in order to address constitutional concerns. "Because the plain language of Title VII purports to reach a church's employment decisions regarding its ministers, courts have had to carve a ministerial exception out of Title VII in order to reconcile the statute with the Constitution." *Bollard v. California Province of the Soc'y of Jesus*, 196 F.3d 940, 946-47 (9th Cir. 1999).

The ministerial exception to Title VII was first articulated by the Fifth Circuit in *McClure v. Salvation Army*, 460 F.2d 553 (5th Cir. 1972). The Fourth Circuit describes it as follows:

19

"The ministerial exception operated to exempt from the coverage of various employment laws the employment relationships between religious institutions and their 'minsters.'"   *EEOC v. Roman Catholic Diocese of Raleigh*, 213 F.3d 795, 800 (4th Cir. N.C. 2000).   The ministerial exception is the well settled law of courts across the country.   *See, e.g.*, *Gellington v. Christian Methodist Episcopal Church*, 203 F.3d 1299, 1301 (11th Cir. 2000); *Bollard*, 196 F.3d at 946-47; *Combs v. Central Tex. Annual Conference of the United Methodist Church*, 173 F.3d 343, 349 - 51 (5th Cir. 1999); *EEOC v. Catholic Univ. of Am*., 83 F.3d 455, 463 (D.C. Cir. 1996); *Young v. Northern Ill. Conference of United Methodist Church*, 21 F.3d 184, 186 (7th Cir. 1994).   Earlier this year, the Supreme Court acknowledged and endorsed the ministerial exception.   *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 132 S. Ct. 694, 707 (2012).

As set forth by the 9th Circuit in *Bollard*:

> But the scope of the ministerial exception to Title VII is limited to what is necessary to comply with the First Amendment. For example, it does not apply to lay employees of a religious institution if they are not serving the function of ministers. In the case of lay employees, the particularly strong religious interests surrounding a church's choice of its representative are missing, and we have concluded that applying Title VII is constitutionally permissible.

*Bollard*, 196 F.3d 940, 947 (9th Cir. 1999) (internal citations omitted).

Recently, the United States Supreme Court recognized the existence of the judicially created "ministerial exception" in the case *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 132 S. Ct. 694 (2012).   The question left unanswered by the Supreme Court in the *Hosanna-Tabor* case, though, is whether lay employees, as opposed to "called" or "ordained" ministers, can fall within the ministerial exception.   The Court stated, "We are reluctant, however, to adopt a rigid formula for deciding when an employee qualifies as a minister.   It is

enough for us to conclude, in this our first case involving the ministerial exception, that the exception covers Perich, given all the circumstances of her employment." *Id.*[7]

This case is not about a religious employer's relationship with its ministerial employees. Plaintiff has not asked this Court to consider any aspect of that relationship. Plaintiff has sought protection from the discriminatory manner in which Defendants' polices or doctrines were applied to her. Despite Defendants' assertions to the contrary, religious intuitions *are* subject to federal employment anti-discrimination laws including Title VII and the ADA with regard to their non-ministerial employees. The Complaint alleges that Plaintiff is a non-ministerial former employee and Defendants have not denied this. (Dkt. 1, ¶¶ 10-13; Dkt. 42). This Court should not allow Defendants to twist their First Amendment protections into a free pass to violate federal employment law.

## IV. DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS SHOULD BE TREATED AS A MOTION FOR SUMMARY JUDGMENT.

Plaintiff's gender, pregnancy and disability discrimination claims survive a constitutional challenge as a matter of law. As evidenced by years of case law spanning federal courts across

---

[7] The plaintiff in *Hosanna-Tabor*, Cheryl Perich, held herself out as a minister, was designated by the church as a minister, and qualified as a minister or priest under the Internal Revenue Code tax exemption, which she claimed on her tax returns. *Id.* at 707-08. She was considered a "called" minister rather than a "lay" teacher by the Church, and her employment relationship with the Church was subject to review and approval by the congregation. *Id.* at 707. She was required to, and did have, advanced training in the Lutheran Church-Missouri Synod religion. *Id.* Looking at all the facts together, the Supreme Court found Ms. Perich was a minister and held for the defendant Church based on the ministerial exception. *Id.* Herx has never taught a religion class, led planning for an all school Mass, or engaged in any religious instruction. (Dkt. 1, ¶ 10). Plaintiff never had any religious training or education in the Catholic faith as a condition of her employment. (Dkt. 1, ¶ 12). Plaintiff has not been ordained by the Catholic Church, she holds no title with the Catholic Church or Diocese, and she does not qualify as a minister or priest under the Internal Revenue Code tax exemption held for ministers. (Dkt. 1, ¶ 12). Plaintiff never held herself out as a minister, did not take any higher education religion classes, nor was she asked by the Defendants to take any higher education religion classes. (Dkt. 1, ¶¶ 13, 15). Defendants have not even alleged that Plaintiff is a minister. Defendants have acknowledged that Plaintiff's supervisor is not a minister, and is a lay employee. (Dkt. 30-1, p.12). Unlike the plaintiff in *Hosanna-Tabor*, Herx cannot reasonably be considered a minister.

the country, including the Supreme Court of the United States, Title VII and the ADA apply to religious employers and apply to parochial schools and dioceses.[8]  As it is well established that Title VII and the ADA are constitutional on the face of those laws, Defendants can, therefore, only reasonably bring an "as applied" constitutional challenge.

Defendants, having raised an "as applied" constitutional challenge to Title VII and the ADA, have thereby triggered conversion of their Fed. R. Civ. P. 12(c) Motion to a Fed. R. Civ. P. 56 Motion (via Fed. R. Civ. P. 12(d)), because Defendants' "as applied" challenge itself requires a careful examination of the facts and circumstances outside the pleadings.  Defendants' tactical choice to omit facts necessary to support their argument should not preclude Plaintiff from discovering the true facts or factual disputes at issue.  Plaintiff must be allowed to complete discovery so that a more complete record is before the Court before the Court must decide a case dispositive motion.

By raising these defenses, Defendants have placed matters outside of the pleadings at issue.  For example, Defendants cite to the Catechism of the Catholic Church in the "Undisputed Facts" section of its Motion for Judgment on the Pleadings, yet have not placed the Catechism in the record or even cited a specific section or page.  (Dkt. 17, p. 3).  Plaintiff must be allowed access to comparator evidence to test the assertion of the defenses.[9]  Plaintiff has not alleged she was not preferred based on her religion, and Defendants have not shown why these defenses would apply.  Moreover, as Defendants assert that they are protected by the defenses found in the ADA at 42 U.S.C. § 12113(d)(2), Plaintiff must be allowed discovery on comparator evidence, or evidence relating to the Defendants' treatment of similarly situated employees, to rebut this defense.  Defendants' adverse employment action against Plaintiff violated the ADA, and if

---

[8] *See*, *supra*, string cite, p. 14.
[9] Without the benefit of discovery, Plaintiff has only been able to scratch the surface in regards to comparator evidence.  (*See* Exhibits 1-4, attached).

Defendants wish to defend on the premise that they "require all applicants and employees conform to religious tenets," Plaintiff must be allowed to complete discovery, including discovery on comparator evidence, in order to properly rebut the defense and prove pretext.

The ministerial exception has consistently been viewed by courts as a fact sensitive issue, and courts have required the cases to proceed through discovery.  *See, e.g.*, *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 582 F. Supp. 2d 881 (E.D. Mich. 2008) (parties conducted discovery and depositions before the case was decided on summary judgment), *vacated* 597 F.3d 769 (6th Cir. 2010), *rev'd* 132 S. Ct. 694 (2012); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318 (11th Cir. 2012) (noting that "[a]fter discovery Southland moved for summary judgment"); *Cline v. Catholic Diocese*, 206 F.3d 651, 656 (6th Cir. 1999) (discussing matters presented at summary judgment and citing the depositions of the parties); *Bollard*, 196 F.3d 940, 951 (9th Cir. 1999) (reversing and remanding the district court's grant of Defendant's motion to dismiss for further discovery); *Ganzy v. Allen Christian School*, 995 F. Supp. At 340(both plaintiff and defendant moved for summary judgment); *First Baptist Church*, 1992 U.S. Dist. LEXIS 14479 at *5 (noting that the case proceeded through discovery to the summary judgment phase following the court's denial of a motion to dismiss).  Defendants have identified no case law or authority which would indicate the issues they have presented are properly decided without a full record.

Plaintiff cannot "present facts essential to justify its opposition" to Defendants' arguments without discovery relating to Defendants' alleged facts, ways in which Defendants' polices and doctrines have been applied to employees similarly situated to Plaintiff, and the details of Plaintiff's former employment relationship with Defendants.  *See* Fed. R. Civ. P. 56(d).

This case is not yet ripe for decision. The legal questions to be decided eventually include, but are not limited to, whether the defenses or exemptions cited by Defendants are applicable on these facts as evidenced by a full record; whether the allegations in the Complaint concerning comparator evidence are supported by discovery; whether the Diocese's decision to (i) notify Plaintiff of nonrenewal in April of 2011, but (ii) instruct her to complete teaching out the school year until June 22, 2011, undermines the assertions of defenses and exemptions; whether the Diocese ever trained, informed, or disseminated information to teachers regarding any policy which they claim Plaintiff violated; whether the stated reasons for the adverse employment action are a pretext; and whether the specific medical procedures Plaintiff underwent fall within Church doctrinal prohibitions. (*See* Dkt. 1, ¶ 34). These, along with others, are fact sensitive issues on which the case will turn. None of these issues can be properly evaluated by the Court at this stage and on this limited record. Plaintiff, therefore, must be allowed to complete discovery and present a full record to the Court before the Court decides any dispositive motions.

## CONCLUSION

For the foregoing reasons, Plaintiff Emily Herx respectfully requests that this Court deny Defendants' Motion for Judgment on the Pleadings Dismissing Plaintiff's Complaint.

Respectfully submitted,

 _/s/ Kathleen A. DeLaney_____
Kathleen A. DeLaney (#18604-49)
Sarah E. Caldwell (#29850-03)
Attorneys for Plaintiff

DELANEY & DELANEY LLC
3646 N. Washington Blvd.
Indianapolis, IN  46205
kathleen@delaneylaw.net
scaldwell@delaneylaw.net

24

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing was filed electronically on the 17th day of September, 2012.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system, who may access this filing through the Court's system:

Scott Hall
Hall & Gooden LLP
shall@hallgooden.com

John C. Theisen
Theisen Bowers & Associates, LLC
jtheisen@tbalawyers.com

__/s/ Kathleen A. DeLaney_____
Kathleen A. DeLaney

DeLaney & DeLaney LLC
3646 N. Washington Blvd.
Indianapolis, IN 46205
Tel. 317.920.0400
Fx. 317.920.0404