UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| EMILY HERX, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Cause No. 1:12-CV-122 |
| | ) | |
| DIOCESE OF FORT WAYNE-SOUTH | ) | |
| BEND INC. AND ST. VINCENT | ) | |
| DE PAUL SCHOOL, | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

### I.  INTRODUCTION

Before the Court is Plaintiff Emily Herx's Motion to Compel Complete Responses to Written Discovery.  (Docket # 86.)   Herx is a former Catholic elementary school teacher whose employment contract was not renewed after it learned she was pregnant through in vitro fertilization treatment, purportedly in violation of the "morals clause" of her contract.  (Compl. ¶¶ 16, 18.)  The Defendants Diocese of Fort Wayne-South Bend Inc. (the "Diocese") and St. Vincent DePaul School (the "School") have filed a response to the Motion.  (Docket # 92.)  On September 27, 2013, the Court held a telephonic hearing on the Motion at which oral argument was heard and concluded.  (Docket # 93.)  The Court took the Motion under advisement.

At issue are the Diocese's Answers to Interrogatories Nos. 3, 4, 5, 6, 7, 9, 10, 11, 15, and 16; the Diocese's Production Responses Nos. 9, 10, 12, 13, 14, and 20; the Diocese's Responses to Requests for Admission Nos. 14, 18, 21, 22, 23, and 24; and the School's Answers to Interrogatories Nos. 15 and 16.  For the reasons stated below, the Motion will be GRANTED IN PART and DENIED IN PART.  Specifically, the Motion will be DENIED as to the Diocese's

Response to Request for Admission No. 14, the School's Answers to Interrogatories Nos. 15 and 16, and the Diocese's Answers to Interrogatories Nos. 15 and 16.  The Motion will be GRANTED as to all remaining discovery requests, but the scope of discovery will be limited to teachers who, from January 1, 2006, to June 22, 2011, were employed by the Diocese, and who signed a Regular Teaching Contract containing a "morals clause" identical to the one Herx signed.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Herx filed her complaint against the Defendants on April 20, 2012, alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k), and Title I of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA").  (Docket # 1.)  On May 31, 2012, Herx served the Defendants with Interrogatories, Requests for Admission, and Requests for Production.  Before the Defendants responded, however—and at the Defendants' urging—this Court issued a Stay of Discovery while the parties briefed and argued a Motion for Judgment on the Pleadings.  (Docket # 33.)

On March 11, 2013, the Court denied the Motion for Judgment on the Pleadings and concurrently vacated the Stay of Discovery.  (Docket # 71.)  On May 6, 2013, Defendants produced documents and written responses, and notified Herx of their objections to several discovery requests.  After several efforts to resolve the issues, Herx filed the instant motion.

The crux of the issues comes down to three broadly-stated questions: (1) whether Herx's potential comparator discovery evidence should be limited to the employees at the School or expanded to the entire Diocese; (2) whether the Defendants are entitled to limit discovery by invoking certain Constitutional and statutory defenses; and (3) whether Herx's discovery

requests are unduly burdensome, vague, ambiguous, irrelevant or overly broad.

In that regard, most of the disputed discovery pertains to information about the Diocese. Herx believes this evidence is discoverable because the Diocese officials, she argues, were the decision makers with respect to her employment. (Pl.'s Br. in Supp. of Mot. to Compel ("Pl.'s Mot.") 8-12.) Herx also argues further that she is entitled to discovery Diocese-wide because all employees who signed a contract containing the "morals clause" were subject to the same enforcement of it by the Diocese. (Pl.'s Mot. 8-12.)

In response, the Defendants argue that discovery requests should be limited to the School because the decision to not renew Herx's employment was made by Principal Guffey and Monsignor Kuzmich and did not involve the Diocese officials. (Dfts.' Mem. in Opp'n to Pl.'s Mot. to Compel ("Dfts.' Mem.") 6-12.) The Defendants argue thusly that the School employees are the only proper comparators.

The Defendants also argue that the First Amendment, Title VII, and the ADA preclude them from certain discovery requests. (Dfts.' Mem. 16-19.) Herx, on the other hand, argues that none of those factors should come into play in the discovery process. (Pl.'s Mot. 12-15.)

Finally, the parties dispute whether Herx's discovery requests are unduly burdensome, vague, ambiguous, irrelevant or overly broad.

### III.  LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) permits discovery into "any nonprivileged matter that is relevant to any party's claim or defense . . . ."  For the purpose of discovery, relevancy will be construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case."  *Chavez v. Daimler Chrysler*, 206 F.R.D. 615, 619 (S.D. Ind. 2002) (quoting *Oppenheimer Fund, Inc. v.*

*Sanders*, 437 U.S. 340, 351 (1978)).  "When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure."  *Id.*  A court can limit discovery upon a finding that the requested discovery is unreasonably cumulative or duplicative; obtainable from a more convenient, less burdensome, or less expensive source; or that the proposed discovery's burden or expense outweighs its likely benefit."  *Id.* at 620.

## IV.  ANALYSIS

### 1.  All the Diocese Teachers Signed to a Regular Teaching Contract Containing the Same "Morals Clause" that Herx Signed Are Potential Comparators

At the hearing on the Motion, Herx offered to narrow the scope of her discovery request to all the Diocese teachers who signed a Regular Teaching Contract containing the same "morals clause" that Herx signed.[1]  The Defendants, however, contend that this request is still too expansive, arguing that only teachers at the School, and perhaps just those who underwent in vitro fertilization treatment, are proper comparators.

In determining the scope of potential comparators, courts look to whether employees were comparable in all material respects.  *Bio v. Fed. Express Corp.*, 424 F.3d 593, 597 (7th Cir. 2003).  The evidence proffered by Herx demonstrates that the Diocese teachers signed to a Regular Teaching Contract containing an identical "morals clause" are proper potential comparators.  All teachers in the Diocese signed to the Regular Teaching Contract were subject to and governed by the same "morals clause."  This contract specifically set forth that "[c]harges of immoral behavior, or of conduct violative of the Teachings of the Church shall ultimately be resolved exclusively by the Bishop, or his designee, as provided in the Diocesan Education

---

[1] Herx had initially sought discovery on all Diocese employees who committed improprieties regarding Church teachings or laws.

4

Policies." The Diocese's decision not to renew Herx's contract was based on her supposed violation of the "morals clause." As such, Herx is entitled to see how the "morals clause" has previously been applied to the Diocese teachers. Limiting potential comparators to, say, only those who have undergone in vitro fertilization is overly restrictive and counter to the broad scope of discovery parties are entitled to in employment discrimination cases.[2] *See Vajner v. City of Lake Station, Indiana*, No 2:09-cv-245, 2010 WL 4193030, at *1 (N.D. Ind. Oct. 18, 2010) ("In the context of employment discrimination cases, the scope of discovery is particularly broad because an employer's general practices are relevant even when a plaintiff is asserting an individual claim for disparate treatment." (citation omitted)).

Furthermore, discovery extends Diocese-wide because Herx has proffered evidence that the Diocese officials were "consulted" about her contract nonrenewal. "[If] a plaintiff can establish that the employment decision was made by someone outside of her work unit, then she is entitled to broader discovery." *Woods v. Von Maur, Inc.*, No. 09 c 7800, 2010 U.S. Dist. LEXIS 88662, at *9 (N.D. Ill. Aug. 27, 2010). "A plaintiff is not required to take on faith the defendant's designation of a decision-maker." *Turner v. Shoney's Inc.*, 195 F.R.D. 637, 639 (S.D. Ind. 1999). "A plaintiff is entitled to probe and test the extent to which the designated person exercised independent judgment or instead carried out the policies or procedures of others." *Id.*

---

[2] The Defendants argue that there are potential First Amendment implications that arise if the Court were to expand the scope of potential comparators beyond teachers at the School receiving in vitro fertilization treatment. The Defendants argue that "the First Amendment does not permit federal courts to dictate to religious institutions how to carry out their religious missions or how to enforce their religious practices." (Dfts.' Mem. 16 (quoting *Hall v. Baptist Mem'l Health Care Corp.*, 215 F.3d 618, 626 (6th Cir. 2000)). In essence, the Defendants argue that it is not for the Court to weigh moral wrongs and decide how the Diocese's "moral clause" should be applied. But the Defendants' argument is premature as the Court is merely allowing Herx the opportunity to discover how her employer has interpreted and applied a contractual term to others who held the same position, leading perhaps, to potential comparators. Therefore, at this stage, the Defendants' First Amendment concerns are not implicated.

In this case, the Defendants admit that Father Mark Gurtner (Judicial Vicar of the Diocese); Dr. Mark Myer (Superintendent of Diocesan Schools); Monsignor Robert C. Schulte (Vicar General of the Diocese); and Most Reverend Kevin C. Rhoades (Bishop of the Diocese), were consulted on the decision to not renew Herx's contract.  (Diocese Answer to Interrog. No. 1.)  Moreover, Herx proffered a letter from Monsignor Kuzmich to Herx stating, "I'm sorry it has come to this, but I am bound by diocesan policy" (Pl.'s Mot. Ex. 33), and a letter from Monsignor Kuzmich to Herx's mother stating "I was following diocesan policy in this matter, and had consulted diocesan officials."  (Pl.'s Mot. Ex. H.)

In summary, because all the Diocese teachers were subject to the same "morals clause" that was cited as the reason Herx's contract nonrenewal, and because there is evidence that the Diocese officials were involved, at least some extent, in her contract nonrenewal, the Diocese teachers signed to a Regular Teaching Contract containing the same "morals clause" are the proper comparators.

## 2.  The First Amendment Does Not Preclude Herx's Discovery Requests.

The Defendants also object on the basis that "[t]he [disputed discovery] constitutes an improper inquiry into religiously based matters involving a religious employer in violation of the Establishment and Free Exercise Clauses of the First Amendment of the U.S. Constitution." (*See, e.g.*, Diocese's Answer to Interrog. No. 3.)  The Defendants' bare assertion that the First Amendment's Free Exercise Clause and Establishment Clause preclude certain discovery requests is unfounded.  The Religious Clauses preclude the *Government* from taking certain actions with respect to religions institutions; they are not implicated in discovery requests from one private party to another.[3]  *See E.E.O.C. v. First Baptist Church*, No. S 89-338, 1990 WL

---

[3] The Establishment Clause precludes the *Government* from favoring or endorsing "either religion generally over nonreligion or one religion over others."  *Lee v. Weisman*, 505 U.S. 577, 627 (1992) (Souter J., concurring).  The

341660, at *3 (N.D. Ind. Apr. 30, 1990) (holding that the First Amendment was not implicated by plaintiff's discovery requests to defendant Church) (*citing Donovan v. Cent. Baptist Church, Victoria*, 96 F.R.D. 4, 5-6 (S.D. Tex. 1982) (finding that in litigation between private parties the "interrogatories could not possibly in themselves cause an excessive entanglement with the Church or interfere with anyone's free exercise of religion").

### 3. Title VII and the ADA Do Not Preclude Herx's Discovery Request

The Defendants also argue they are statutorily exempt from Title VII and ADA claims. Like their First Amendment argument, the Defendants' argument here is without merit. To begin with, the Court already rejected these arguments when it denied the Defendants' Motion for Judgment on the Pleadings. (Docket # 71.)

Second, the Title VII exemptions cited by the Defendants are inapplicable to this case. *See Rayburn v. Gen. Conference of Seventh-Day Adventists*, 772 F.2d 1164, 1166 (4th Cir. 1985) (citing cases for rule that "Title VII does not confer upon religious organizations a license to make [employment decisions] on the basis race, sex, or national origin"). The first statute cited by Defendants, 42 U.S.C. § 2000e-1, "applies only to discrimination on the basis of religion. The ban on discrimination in employment on account of race, national origin, or sex is still applicable to religious organizations." *Elbaz v. Congregation Beth Judea, Inc.*, 812 F. Supp. 802, 807 (N.D. Ill. 1992) (citation omitted). The same is true for the second Title VII statute cited by the Defendants, 42 U.S.C. § 2000e-2(e)(2). *See Id.* ("Again, though it is religious discrimination that (in proper situations) is not prohibited; § 2000e-(2)(e)(2) does not permit discrimination on the basis of sex, race or national origin"). Because Herx's claims are not based on religious discrimination, the Title VII statutes cited by the Defendants are inapplicable.

---

Free Exercise Clause "withdraws from *legislative power*, state and federal, the exertion of any restraint on the free exercise of religion." *Jimmy Swaggart Ministries v. Bd. of Equalization of Cal.*, 493 U.S. 378, 384 (1990) (emphasis added).

Finally, the Defendants' argument is unpersuasive because they fail to cite to a single case in which a court has found that Title VII and the ADA exempt a religious institution from complying with discovery requests.  Federal discovery standards "provide for liberal discovery by requiring disclosure of any relevant matter" not privileged.  *Barker v. Life Ins. Co. of N. Am.*, 265 F.R.D. 389, 393 (S.D. Ind. 2009).  Because the discovery sought is relevant and because the Defendants have failed to show why Title VII or the ADA precludes Herx's discovery requests, the Defendants' argument is rejected.

### 4. Only the School's and the Diocese's Answers to Interrogatories Nos. 15 and 16 and the Diocese's Responses to Requests for Admission No. 14 are Overly Broad or Irrelevant

Finally, the Defendants argue that the disputed discovery requests are unduly burdensome, vague, ambiguous, irrelevant or overly broad.  This argument is unpersuasive, except as to the School's and the Diocese's Answers to Interrogatories Nos. 15 and 16 and the Diocese's Response to Request for Admission No. 14.

The Defendants argue that several discovery requests are unduly burdensome because they require obtaining files from the Diocese's eighty-one parishes and forty-one schools.  But Herx offered to narrow the scope to just the Diocese's schools, eliminating the burden of obtaining files from the eighty-one parishes.  As to the forty-one schools, the Defendants have failed to explain why these discovery requests would be unduly burdensome.  The Defendants have not argued that the information is hard to obtain or is not maintained.  Moreover, the fact that the Diocese has forty-one schools does not, standing alone, demonstrate there are an unreasonable amount of files to sort through.  Finally, the temporal scope of Herx's requests is limited to January 1, 2006, to June 22, 2011; the latter date coinciding with Herx's contract nonrenewal.  This five and a half year period provides Herx with enough information to

determine whether the Defendants treatment of her differed from its treatment of other employees, and further minimizes the Defendants' production burden. *See Sykes v. Target Stores*, No. 00 C 5112, 2002 WL 554505, at *4 (N.D. Ill. Apr. 15, 2002) (reasoning that discovery requests should be tailored to reasonable time period surrounding alleged discriminatory event).

The Defendants' argument that the disputed discovery requests are vague, overly broad, ambiguous, or irrelevant, are little more than boilerplate conclusions. Courts in this circuit have repeatedly found that Defendants cannot meet their burden through "a reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." *McGrath v. Everest Nat'l Ins. Co.*, No. 2:07 cv 34, 2008 WL 2518710, at *10 (N.D. Ind. June 19, 2008).

Herx's Interrogatories Nos. 15 and 16, however, are overly broad and unduly burdensome. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). In these interrogatories, Herx asks the School to identify "all ways in which a male employee can commit an impropriety regarding Church teachings or laws" regarding infertility treatments and sterilization or birth control. (Pl.'s Interrog. to the School Nos. 15 and 16.) Because these Interrogatories seemingly encompass innumerable scenarios, to require the Defendants to identify each possible event or factual subset places them in the position of trying to corral a virtually limitless universe of improprieties, many of which have no relevance to the instant dispute. Therefore, Herx's Motion to Compel the School's and the Diocese's Answers to Interrogatories Nos. 15 and 16 is denied.

Finally, Herx's Request for Admission No. 14 requests the Diocese "[a]dmit that the Diocese employs openly gay and lesbian teachers, including in its elementary schools." This

request—unexplained as it is—is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. *See* Fed. R. Civ. P. 26(b)(i).  Therefore, Herx's Motion to Compel will be granted in part and denied in part.

## V. CONCLUSION

In summary, Plaintiff's Motion to Compel (Docket # 86) is GRANTED IN PART and DENIED IN PART.  Defendants shall produce, subject to the terms of the protective order, the documents, answers to interrogatories, and requests for admission ordered herein on or before November 4, 2013.

SO ORDERED.

Entered this 7th day of October, 2013.

S/ Roger B. Cosbey
Roger B. Cosbey
United States Magistrate Judge