UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| EMILY HERX | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 1:12-CV-122 RLM |
| | ) | |
| DIOCESE OF FORT WAYNE-<br>SOUTH BEND, INC., | ) ) | |
| | ) | |
| Defendant | ) | |

OPINION and ORDER

After a trial in which liability was fiercely contested, but damages were barely discussed, post-trial motions have circled around onto damages issues. Unfortunately, elements of damages have wandered unpredictably in and out of the court's efforts to reconcile the jury's damages award with the law and the evidence produced at trial. It seems helpful to back up to square one so the court might get it right this time.

A

On December 19, 2014, the jury found for plaintiff Emily Herx and awarded the following damages:

$1,750,000 in physical, mental, and/or emotional pain and suffering

$125,000 in medical care

$75,000 in lost wages

$1 in punitive damages

for a total of $1,950,001.

B

Defendant Diocese of Fort-Wayne-South Bend, Inc. moved to reduce the damages award pursuant to the statutory $300,000 cap in 42 U.S.C. § 1981a(b)(3)(D). The Diocese argued that the medical care award should be counted against the cap. In light of the parties' earlier agreement and the jury instructions, the court disagreed and left the $125,000 medical costs as an element of damages not subject to the cap. On January 12, the court granted the Diocese's motion in part, and directed the clerk to enter judgment in the sum of $543,803, consisting of

$299,999 in compensatory damages (pain and suffering)

$1 in punitive damage(s)

$125,000 in medical care

$118,803 in lost wages and benefits, consisting of $88,450 in lost wages, $7,500 in lost tuition benefits for Mrs. Herx's son, and $22,853 for post-termination out-of-pocket health care costs.

C

The Diocese then moved for judgment as a matter of law. Setting aside the arguments concerning liability, the Diocese argued that the award for lost wages and benefits had to be reduced because (i) the back pay award didn't take into account the income Mrs. Herx received from her post-termination employment; (ii) no evidence supported the award of $22,853 for post-termination out-of-pocket health care costs; and (iii) nothing should be awarded for lost tuition benefits. The court disagreed with the Diocese as to the second and third points, but agreed with the Diocese in part with respect to the back pay argument. On March 9, the court reduced the lost wages component of the award to $22,916.66.

>The court ordered a remittitur to an award of $353,269.66, consisting of:
>
>$299,999 in compensatory damages (pain and suffering)
>
>$1 in punitive damage(s)
>
>$53,269.66 in lost wages and benefits, consisting of $22,916.66 in lost wages, $7,500 in lost tuition benefits for Mrs. Herx's son, and $22,853 for post-termination out-of-pocket health care costs.

A reader more careful than the court might notice that the $125,000 medical care component had fallen out of the equation. In its motion, the Diocese had argued that the evidence didn't support that award. Inexplicably, the ruling on the motion omitted any reference to that component.

The court ordered a new trial unless Mrs. Herx accepted a remittitur reducing the amount of the judgment to $353,269.66.

D

Mrs. Herx responded that she would accept the remittitur with two modifications, one stated and the other unstated. First, she noted that the court's lost wages calculation included $22,916.66 for the months of her part-time employment, but omitted the $22,516.67 that reflects her lost wages for the months in which she was unemployed. So the "lost wages and benefits" component should be $75,786.33, consisting of

$22,916.66 in lost wages while Mrs. Herx was employed part time

$22,516.67 in lost wages while Mrs. Herx was unemployed

$7,500 in lost tuition benefits for Mrs. Herx's son

$22,853 in post-termination out-of-pocket health care costs.

The Diocese agrees with Mrs. Herx's argument on that calculation. One who read only the last order and these briefs would think Mrs. Herx was agreeing to a remittitur with judgment in the sum of $375,786.33, consisting of

$299,999 in compensatory damages (pain and suffering)

$1 in punitive damage(s)

$75,786.33 in lost wages and benefits, as just recalculated.

But Mrs. Herx, tacitly confident the court didn't mean to strip out the $125,000 medical care component of the jury's damages award, informs the court that she will accept a remittitur to $500,786.33 — a figure that re-incorporates the medical care component.

The Diocese, whose objection to the medical care component was either sustained silently or ignored altogether in the March 9 order, rightly thinks more judicial reasoning is needed.

E

And so the court turns to the parties' arguments concerning the $125,000 medical care component of the jury's award. The court earlier rejected the Diocese's argument that the medical care award has to yield to the $300,000 cap (since the pain and suffering damages alone exceeded the cap). The Diocese's later filings have preserved that argument for appellate review, but have given the court no persuasive reason to change its earlier ruling.

The earlier ruling on the cap didn't address whether evidence presented at trial supported the award. Mrs. Herx says the evidence supports the award, but doesn't point the court to that evidence. Left without such guidance, the court agrees with the Diocese that the evidence doesn't support an award of $125,000. After reviewing the transcript and the court's notes, the following evidence addresses medical expenses.

Brian Herx, Mrs. Herx's husband, testified that when she was terminated, his insurance through Blue Cross/Blue Shield Illinois became the family's primary insurance. Before the termination, his insurance was secondary and covered everything Mrs. Herx's policy didn't cover. Mr. Herx reviewed the family's out-of-pocket expenses — what his insurance didn't cover, though the spouses' two policies would have covered — and identified the following:

- $550 in prescriptions from Dr. Panczer
- $200 in prescriptions from Drs. Park, Gebfert, and Butler
- $3,550 for root canals and crowns
- $22,853 in other expenses excluding what she paid Dr. Panzcer for oral surgery

Dr. Panczer testified that he charged Mrs. Herx $7,835 for therapy sessions from March 2012 through trial.

Combining those figures produces a total sum spent on medical care up to trial of $34,988. The trial evidence supports a medical component of damages outside the cap of that amount, but no more.

F

Mrs. Herx indicated that she would accept a remittitur for a judgment of $500,786.33. Today's ruling, which more completely addresses the issues relating to the Diocese's excessive damages arguments, indicates that the evidence

presented at trial can support a verdict no greater than $410,574.33, calculated as follows:

$299,999 in compensatory damages (pain and suffering)

$1 in punitive damage(s)

$34,988 in medical care

$75,786.33 in lost wages and benefits, consisting of $22,916.66 in lost wages while Mrs. Herx was employed part time, $22,516.67 in lost wages while Mrs. Herx was unemployed, $7,500 in lost tuition benefits for Mrs. Herx's son, and $22,853 in post-termination out-of-pocket health care costs.

Accordingly, the court DEFERS ruling on the defendant's alternative motion for remittitur or new trial [docket # 218] until the plaintiff notifies the court whether she will accept a remittitur to a judgment of $410,773.33 in compensatory damages and $1 in punitive damages. The court will grant a new trial, limited to the issue of damages, should the plaintiff decline the remittitur. Because a new trial remains a possibility, ruling on the objections to the bills of costs and the attorney fee petitions would be premature.

ENTERED:    July 7, 2015

                                          /s/ Robert L. Miller, Jr.
                                        Robert L. Miller, Jr., Judge
                                        United States District Court